# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph McLean, Paul Dunn, Phillip DiWilliams, Darin Buckman, Mark Pinkosh, and Troy Franks<br><br>Plaintiffs,<br><br>v.<br><br>United States Conference of Catholic Bishops,<br><br>Defendant. | Case No. 18-cv-3175 (DWF/HB)<br><br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiffs Joseph McLean, Paul Dunn, Phillip DiWilliams, Darin Buckman, Mark Pinkosh, and Troy Franks' Motion for Jurisdictional Discovery [Doc. No. 26]. Plaintiffs seek leave to conduct jurisdictional discovery of Defendant United States Conference of Catholic Bishops' ("USCCB") contacts in Minnesota. For the reasons set forth herein, the Court denies the motion.

## I.     Background

### A.     Allegations in the Complaint

Plaintiffs are six individuals who have accused ordained Catholic priests of engaging in unpermitted sexual contact with or sexually abusing them. (*See* Compl. ¶¶ 11–47 [Doc. No. 1].) Of the six Plaintiffs, only Joseph McLean resides in Minnesota. (*See* Compl. ¶¶ 1–7.) Defendant USCCB is an organization comprised of Catholic

bishops from each diocese in the United States. (Compl. ¶ 8.) The USCCB's principal place of business is located in Washington D.C., but Plaintiffs allege the USCCB transacts business in every state, including Minnesota. (Compl. ¶¶ 7, 9.) Federal subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. (Compl. ¶ 10.)

Plaintiffs bring two claims against the USCCB: (1) public nuisance under the common law and Minn. Stat. § 609.74, and (2) nuisance under Minn. Stat. § 561.01. (Compl. ¶¶ 96–111.) Plaintiffs contend the USCCB failed to uphold a pledge to protect children and young adults from sexual abuse by clergy and broke its promises to address past instances of child sexual assault. (Compl. ¶¶ 63–65.) Plaintiffs further assert the USCCB concealed criminal activity, failed to report allegations of sexual abuse, and otherwise endangered children by its actions or omissions. (Compl. ¶¶ 73, 85, 91–93.)

### B. The USCCB's Motion to Dismiss

On January 24, 2019, the USCCB filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that it lacks sufficient minimum contacts with Minnesota. (Def.'s Mot. Dismiss at 1 [Doc. No. 9].) Plaintiffs wrote a letter to the Honorable Donovan W. Frank, United States District Judge, seeking leave to conduct limited jurisdictional discovery before responding to the motion to dismiss. (Goffe Letter at 1, Feb. 1, 2019 [Doc. No. 19].) The USCCB filed a letter opposing the request. (Wieser Letter, Feb. 7, 2019 [Doc. No. 20].) The District Court instructed Plaintiffs to file a motion before the undersigned for leave to take jurisdictional discovery. (Text Order, Feb. 14, 2019 [Doc. No. 21].)

Plaintiffs filed their opposition to the motion to dismiss on February 14, 2019. They argued that general jurisdiction existed because the USCCB's contacts with Minnesota were continuous and systemic, and that specific jurisdiction existed because the USCCB purposely directed its activities at Minnesota residents and the injuries alleged in this case resulted in part from those activities. (Pls.' Mem. Opp'n Mot. Dismiss at 1 [Doc. No. 22].) Plaintiffs also repeated their request for leave to take jurisdictional discovery to support their positions. (*Id.*)

### C. Plaintiffs' Motion for Leave to Take Jurisdictional Discovery

On February 15, 2019, Plaintiffs filed a motion for leave to take jurisdictional discovery [Doc. No. 26], and filed their supporting memorandum on March 6, 2019 [Doc. No. 31]. Plaintiffs proposed 24 interrogatories and 20 document requests. (*See* First Goffe Aff. Exs. 11, 12 [Doc. Nos. 24-11, 24-12].) The proposed discovery requests were extremely broad. For example, Interrogatory No. 9 asked the USCCB to describe "all verbal, written or electronic communications between the USCCB and any officer, director, or managing agent of the Archdiocese of Saint Paul and Minneapolis from 1950 to present." (First Goffe Aff. Ex. 11 at 6.) Document Request No. 8 asked for "[a]ll documents that relate to the presence within or activities within the State of Minnesota by the USCCB and its agents or representatives from 1950 to the present." (First Goffe Aff. Ex. 12 at 7.) Plaintiffs also asked for leave to depose Cardinal Daniel DiNardo, the current president of USCCB; and Theresa Ridderhoff, the Associate General Secretary of the USCCB. (Pls.' Mem. Supp. Mot. Jurisdictional Discovery at 7 [Doc. No. 31].) The USCCB filed its memorandum in opposition to the motion on March 13, 2019, and this

Court heard oral argument on the motion on March 20, 2019.

As reflected in the minutes of the motion hearing, the Court was not persuaded at that time that some jurisdictional discovery would *not* be appropriate, but found that Plaintiffs' proposed discovery requests were exceptionally broad and not adequately tied to the specific assertions made in their opposition to Defendants' motion to dismiss. (Ct. Mins. at 1 [Doc. No. 42].) Accordingly, the Court held the motion in abeyance and instructed Plaintiffs' counsel to "craft and provide to Defendant's counsel no more than ten interrogatories and no more than five document requests that are *specific, focused, and tailored* to Plaintiff's specific assertions concerning personal jurisdiction." (*Id.*) (emphasis added). The Court further instructed the parties to meet and confer on the new discovery requests and advise the Court in writing about their progress. (*Id.* at 1–2.) Despite the Court's guidance, the parties remain at total impasse. (*See* Pls.' Suppl. Mem. [Doc. No. 52]; Def.'s Suppl. Mem. [Doc. No. 54].)

## II. Discussion

### A. General and Specific Jurisdiction

A court may exercise personal jurisdiction over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1949)). The defendant's contacts with the forum must be sufficient to establish that the defendant "should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and must arise from the defendants'

purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Minimum contacts must exist either at time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

The Eighth Circuit has identified five factors to measure a defendant's minimum contacts: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). The third factor distinguishes between general and specific jurisdiction. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The last two factors are "of secondary importance and not determinative." *Land-O-Nod*, 708 F.2d at 1340.

### B. Jurisdictional Discovery

Jurisdictional discovery may be appropriate once the moving party offers "documentary evidence, and not merely speculations or conclusory allegations" relating to the opposing party's contacts with the forum state. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). The documentary evidence submitted in *Steinbuch* consisted of (1) monthly reports of book sales in the State of Arkansas that were provided by a distributor to the defendant-publisher and the (2) defendant-publisher's active involvement in the marketing and promotion of books placed in stores. *Id.* at 588. The

5

Eighth Circuit determined that jurisdictional discovery was warranted by this evidence and remanded the matter "for an opportunity for *tailored* discovery to elicit whether" the defendant-publisher's contacts with Arkansas established general personal jurisdiction. *Id.* at 589 (emphasis added).

Similarly, in *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir. 2003), the Eighth Circuit determined that the plaintiffs should be allowed to take jurisdictional discovery on remand, because the plaintiffs had produced documentary evidence of the defendant's business contacts (specifically, home-equity loans and lines of credit to Missouri residents) and internet contacts (through its website) in support of their argument that the defendant was subject to general personal jurisdiction in Missouri. *Id.* at 708–13. The court held that jurisdictional discovery was warranted on very specific and narrow issues: to determine the number of liens the defendant had on property located in Missouri and

> the number of times that Missouri consumers have accessed the Web site; the number of Missouri consumers that have requested further information about Prudential Savings' services; the number of Missouri consumers that have utilized the online loan-application services; the number of times that a Prudential Savings representative has responded to Missouri residents after they have applied for a loan; the number and amounts of home-equity or other loans that resulted from online-application submission by Missouri consumers, or which are secured by Missouri property.

*Id.* at 710, 712–13.

The Eighth Circuit concluded that jurisdictional discovery was not warranted, however, in *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070 (8th Cir. 2004). There, the plaintiff did not rebut the defendants' jurisdictional challenge with testimony, affidavits,

6

or other evidence, but simply rested on the allegations in his complaint to establish minimum contacts. *Id.* at 1074. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* at 1074 n.1 (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).

In *Greenbelt Resources Corp. v. Redwood Consultants, LLC*, 627 F. Supp. 2d 1018 (D. Minn. 2008), Judge Frank considered *Steinbuch*, *Lakin*, and *Dever* before ultimately denying a request for leave to take jurisdictional discovery. Judge Frank noted that the *Greenbelt* plaintiff had, "for the most part, offered only conclusory allegations that Defendants conduct business in Minnesota." *See Greenbelt*, 627 F. Supp. 2d at 1028. Unlike *Lakin*, the "request for jurisdictional discovery [was] not specifically targeted to flesh out connections already shown to exist, but instead [was] more akin to a fishing expedition in which a plaintiff intends to cast a wide net for potential contacts with a forum state." *Id.*

In the matter at hand, Plaintiffs have described the following contacts with Minnesota: a policy directive and canon laws that must be observed in all dioceses in the United States, including those in Minnesota; the existence of bishops in Minnesota who are, or were, members and leaders of the USCCB; the collection of donations and other revenue from the Minnesota dioceses; and federal tax-exempt status conferred to dioceses in Minnesota via an IRS group exemption. (Pls.' Mem. Supp. Mot. Jurisdictional Discovery at 2–3, 5–6; Haselberger Aff. ¶¶ 9–12 [Doc. No. 23].) Significantly, these contacts exist with every State; they are not specific to Minnesota.

As indicated at the motion hearing, the Court was willing to entertain the possibility that some jurisdictional discovery was warranted, but given the breadth of the original discovery requests and the lack of correlation to the asserted bases for jurisdiction, the Court was not in a position to frame the parameters of possible discovery. The Court therefore granted Plaintiffs an opportunity to prepare new *tailored* and *focused* discovery requests that pertain *specifically* to their assertions of jurisdiction. (Mot. Hr'g Tr. at 31 [Doc. No. 49].) Plaintiffs squandered that opportunity. They merely altered the timeframe from 1950 to present to 2000 to present (still a nineteen-year timeframe), and replaced some of their existing discovery requests with equally broad requests.

For example, new Document Request No. 2 requests "[a]ll correspondence to, from or between members of Defendant and persons in Minnesota pertaining to the USCCB's policies regarding sexual misconduct, including the Charter for Protection of Children and Young People." (Second Goffe Aff. Ex. 1 [Doc. No. 53-1].) New Document Request No. 3 asks for "[a]ll correspondence regarding sexual misconduct by clergy to, from or between the USCCB and persons in Minnesota, including the Minnesota Dioceses." (*Id.*) New Document Request No. 4 asks for "[a]ll documents regarding the system used to communicate with the Minnesota Dioceses and Minnesota Catholic officials, including but not limited to any electronic messaging system." (*Id.*) New Document Request No. 5 seeks "[a]ll documents that relate to Defendant's transactions in Minnesota, including money transfers to or from persons in Minnesota." (*Id.*) The new interrogatories are just as broad, requesting, for example, a description of

"all methods by which the USCCB implements and supervises compliance with its normal and regulations in Minnesota"; a description of "all financial transactions between the USCCB and Catholic entities in Minnesota, including but not limited to, the national collection, donations and taxes"; and a description of "all communications by, between and among members of the USCCB and individuals in Minnesota regarding sexual misconduct." (Second Goffe Aff. Ex. 2 [Doc. No. 53-2].)

Thus, despite the Court's instructions, Plaintiffs were unable to craft discovery requests that are specific, focused, and tailored to their assertions concerning general and specific personal jurisdiction. Instead, the breadth of these new discovery requests demonstrates that Plaintiffs are simply casting about for contacts with Minnesota.

There is one more aspect to the Court's consideration of whether to permit jurisdictional discovery: proportionality. The principle that a court must carefully circumscribe the scope of jurisdictional discovery is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure, which added a discussion of proportionality to Rule 26(b)(1)." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018). In determining whether discovery is proportional to the needs of a case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

On balance, the Court finds the jurisdictional discovery requested by Plaintiffs disproportional to the needs of the case. First, though the existence of personal

jurisdiction is essential in any case, it is not essential that the USCCB be subject to personal jurisdiction *in Minnesota*. The parties agree that the USCCB may be sued in the District of Columbia. Second, the USCCB has demonstrated that it does not have access to certain information requested by Plaintiffs, such as communications directly between bishops, and Plaintiffs have not shown otherwise. Third, given the breadth of the new discovery requests, the Court believes that the burden and expense of locating and producing the requested information would be substantial. Even though the USCCB did not substantiate its burdensomeness argument with an affidavit estimating the number of attorney hours, pages, or dollars, the Court has no trouble concluding that the amount of work that would have to be done simply to determine whether the USCCB can be sued in Minnesota outweighs the likely benefit of the discovery. Fourth, it makes little sense for the parties to expend resources litigating jurisdiction instead of the merits when the USCCB is subject to personal jurisdiction elsewhere.

The sole factor weighing in favor of Plaintiffs in the proportionality calculus is the importance of the discovery in resolving the jurisdictional issue.[1] It is possible that if Plaintiffs receive the entire universe of information and documents they have requested, the nature and extent of the USCCB's contacts with Minnesota would be revealed. But it is as likely as not that the discovery will not yield sufficient minimum contacts to establish personal jurisdiction here, and nothing about the discovery proposed or Plaintiffs' explanation of it persuades the Court that the light is reasonably likely to be

---

[1] The amount-in-controversy factor is neutral.

worth the candle. Consequently, in light of the scope of the requests, the burden and expense in responding, the lack of access by Defendant to some of the information requested by Plaintiffs, and the existence of personal jurisdiction elsewhere, the Court concludes that the discovery requested by Plaintiffs is not proportional to the needs of the case and the issues before the Court.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs Joseph McLean, Paul Dunn, Phillip DiWilliams, Darin Buckman, Mark Pinkosh, and Troy Franks' Motion for Jurisdictional Discovery [Doc. No. 26] is **DENIED**.


Dated: May 7, 2019					 s/ *Hildy Bowbeer*
							HILDY BOWBEER
							United States Magistrate Judge